## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BIOGEN INC. and BIOGEN MA INC.,

                Plaintiffs,

      v.

NEURIMMUNE HOLDING AG and
NEURIMMUNE SUBONE AG,

                Defendants.

Civil Action No. _____

## COMPLAINT

Plaintiffs Biogen Inc. and Biogen MA Inc. (individually or collectively, "Biogen" or "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Complaint for Declaratory Judgment and Permanent Injunctive Relief against Defendants Neurimmune Holding AG and Neurimmune SubOne AG (individually or collectively, "Neurimmune" or "Defendants"), and allege as follows:

### Nature of the Action

1.      This action stems from Neurimmune's wrongful attempt to lay claim to proprietary technology that Biogen disclosed to Neurimmune under the terms of a confidentiality agreement ("Confidentiality Agreement"). The confidential disclosures made pursuant to that agreement included a novel potential therapeutic that Biogen independently invented without any involvement of Neurimmune (the "Biogen

Therapeutic"). This technology forms part of Biogen's larger Tissue-Enhanced Delivery Platform, developed to deliver innovative therapies for people living with serious neurological and neurodegenerative diseases, including Alzheimer's disease.

2.      Under the Confidentiality Agreement, Biogen shared details of its proprietary Tissue-Enhanced Delivery Platform, specifically involving the Biogen Therapeutic. Neurimmune subsequently asserted that it has rights to the Biogen Therapeutic based on a now-terminated 2007 Collaborative Development and License Agreement, as amended (the "2007 Collaboration Agreement"), between Plaintiff Biogen MA Inc. and Defendant Neurimmune SubOne AG. Neurimmune also asserted that Biogen needs a license from Neurimmune to continue developing the Biogen Therapeutic. Biogen disputes that Neurimmune holds any rights to the Biogen Therapeutic and disputes that it must take a license to continue developing the Biogen Therapeutic.

3.      Biogen therefore brings this action for a declaratory judgment and for injunctive relief.

## The Parties

4.      Plaintiff Biogen Inc. is a global biotechnology company. It engages in the discovery, development (including making U.S. Food and Drug Administration ("FDA") regulatory filings), and commercialization of innovative therapies, including those targeting serious neurological and neurodegenerative conditions.

5.     Biogen Inc. and its affiliates presently market drugs in the United States and globally across several disease areas, including Alzheimer's disease, multiple sclerosis, and spinal muscular atrophy.

6.     Biogen Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 225 Binney Street, Cambridge, Massachusetts 02142.

7.     Plaintiff Biogen MA Inc. is a wholly owned subsidiary of Biogen Inc. and is a corporation organized and existing under the laws of Massachusetts, having a principal place of business at 225 Binney Street, Cambridge, Massachusetts 02142.

8.     Upon information and belief, Defendant Neurimmune Holding AG is a corporation organized and existing under the laws of Switzerland, having a principal place of business at Wagistrasse 18, 8952 Schlieren, Zürich, Switzerland.

9.     Upon information and belief, Defendant Neurimmune SubOne AG is a wholly owned subsidiary of Neurimmune Holding AG and is a corporation organized and existing under the laws of Switzerland, having a principal place of business at Wagistrasse 18, 8952 Schlieren, Zürich, Switzerland.

10.     On November 2, 2007, the companies then known as Neurimmune Therapeutics AG and Biogen Idec MA Inc. (now Plaintiff Biogen MA Inc.) entered into the 2007 Collaboration Agreement.  Upon information and belief, on November 13, 2007, Neurimmune Therapeutics AG transferred the 2007 Collaboration Agreement to Defendant Neurimmune SubOne AG, and Neurimmune Therapeutics AG was replaced by Neurimmune SubOne AG as a party to the 2007 Collaboration Agreement.

11.     Upon information and belief, Neurimmune Therapeutics AG remained liable for all of the obligations of Defendant Neurimmune SubOne AG under the 2007 Collaboration Agreement.  Upon information and belief, in or around 2010, Neurimmune Therapeutics AG merged into Defendant Neurimmune Holding AG, which acquired all assets and liabilities of Neurimmune Therapeutics AG.

12.     On December 2, 2024, Neurimmune SubOne AG entered into the Confidentiality Agreement with Biogen MA Inc. to explore Neurimmune SubOne AG's interest in a business transaction with Biogen.  Following the execution of the Confidentiality Agreement, Biogen MA Inc. shared proprietary information with Neurimmune SubOne AG regarding the Biogen Therapeutic in development.

13.     Neurimmune Holding AG and Neurimmune SubOne AG are each a Defendant because, among other actions detailed in this Complaint, they have wrongly asserted rights to the Biogen Therapeutic and threaten Biogen's investment and continued development of its proprietary technology, by itself or in collaboration with third parties, for the benefit of patients suffering from Alzheimer's disease.

## Jurisdiction and Venue

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  For purposes of Section 1332, Biogen Inc. is a citizen of Delaware and Massachusetts, and Biogen MA Inc. is a citizen of Massachusetts.  28 U.S.C. § 1332(c). Neurimmune Holding AG and Neurimmune SubOne AG are citizens of a foreign state. *Id*.  There is therefore complete diversity of citizenship between the Parties.  The

amount in controversy exceeds $75,000, as is facially apparent from the facts set forth herein.

15.    This Court has personal jurisdiction over Neurimmune Holding AG because Neurimmune Holding AG has continuous and systematic contacts with Massachusetts and has also purposefully directed activities toward Massachusetts that give rise to the claims asserted herein.  Neurimmune Holding AG has continuously interacted with Biogen's Massachusetts-based personnel, participated in meetings and negotiations in this District, and derived substantial commercial benefit from its relationship with Biogen.  Moreover, the claims in this action arise directly from Neurimmune Holding AG's contacts with Massachusetts, including but not limited to its claims to rights to Biogen's proprietary technology discussed herein.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Massachusetts.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Neurimmune Holding AG is a foreign defendant that does not reside in the United States and therefore may be sued in any judicial district.

17.    This Court has personal jurisdiction over Neurimmune SubOne AG because Neurimmune SubOne AG has continuous and systematic contacts with Massachusetts and has also purposefully directed activities toward Massachusetts that give rise to the claims asserted herein.  Neurimmune SubOne AG has continuously interacted with Biogen's Massachusetts-based personnel, participated in collaboration governance and other business meetings and negotiations in this District, and derived

substantial commercial benefit from its relationship with Biogen.  Moreover, the claims in this action arise directly from Neurimmune SubOne AG's contacts with Massachusetts, including but not limited to the Confidentiality Agreement it executed concerning Biogen's proprietary technology (which is governed by the laws of Massachusetts) and its claims to rights to Biogen's proprietary technology discussed herein.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Massachusetts.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Neurimmune SubOne AG is a foreign defendant that does not reside in the United States and therefore may be sued in any judicial district.

19.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  As detailed in this Complaint, an actual, present, and justiciable controversy exists between Biogen and Neurimmune, and this Court "may declare the rights and other legal relations" with respect to that controversy.

## Background

### *Biogen's Proprietary Technology*

20.     Amyloid-beta ("Abeta") is a protein that, when accumulated in the brain, can lead to the formation of Abeta plaques that are believed to be a major contributor to Alzheimer's disease.  For over half a century, scientists have sought to create and develop therapies that reduce or eliminate these plaques as a means of treating

Alzheimer's disease.  One such approach involves the use of antibodies that target and bind to Abeta, leading to a reduction of plaque formation in the brain.

21.    Because Abeta protein accumulates within the brain of an Alzheimer's patient, any therapeutic targeting Abeta – such as an antibody – must be able to cross the blood-brain barrier.  The blood-brain barrier, however, severely restricts many substances, including antibodies, from entering the brain via the bloodstream, posing a significant challenge to effective treatment of neurological conditions like Alzheimer's disease.

22.    To address this challenge, Biogen invested substantial time and resources in the creation and development of the novel Biogen Therapeutic.  Unlike monoclonal antibodies, which bind to a single target, the Biogen Therapeutic is bispecific – it binds both to the transferrin receptor ("TfR"), which is expressed on the blood-brain barrier, and to Abeta plaques.  This dual binding enables the Biogen Therapeutic to cross the blood-brain barrier via TfR-mediated transport and subsequently bind Abeta protein to reduce Abeta plaques.

23.    The Biogen Therapeutic is an example of a potential therapy using Biogen's Tissue-Enhanced Delivery Platform, which is a toolbox developed by Biogen to help molecules cross the blood-brain barrier.  Biogen's Tissue-Enhanced Delivery Platform was discovered and engineered by Biogen, in part, by utilizing technologies under an agreement with Adimab, LLC, a biotechnology company with expertise in therapeutic antibody discovery and engineering.  Biogen's Tissue-Enhanced Delivery Platform is not limited to Biogen's use in the Biogen Therapeutic; it can be used across

different types of therapeutic molecules and modalities where crossing the blood-brain barrier is necessary.

### *The Prior, Unrelated 2007 Collaboration Agreement Between Biogen and Neurimmune Regarding Human-Derived Anti-Abeta Antibodies*

24.     On November 2, 2007, Biogen Idec MA Inc. (now Biogen MA Inc.) and Neurimmune Therapeutics AG entered into the 2007 Collaboration Agreement (later amended) for the purpose of developing and commercializing certain anti-Abeta monoclonal antibodies derived from a human for the prevention, delay of progression, and treatment of disease in humans.  On or around November 13, 2007, Neurimmune SubOne AG replaced Neurimmune Therapeutics AG as the party to the 2007 Collaboration Agreement.

25.     This collaboration resulted in the development of the human-derived anti-Abeta monoclonal antibody known as aducanumab, which received FDA approval for the treatment of Alzheimer's disease in June 2021 and was marketed as Aduhelm®.

26.     On November 17, 2023, Biogen exercised its contractual right to terminate the 2007 Collaboration Agreement, and in January 2024, publicly announced its decision to discontinue the development and commercialization of Aduhelm®.

27.     As a result of the termination of the 2007 Collaboration Agreement, certain defined rights to aducanumab were returned to Neurimmune, as provided in that agreement.  Termination of the 2007 Collaboration Agreement did not confer to Neurimmune rights to Biogen's other research, development, and commercialization work, such as Biogen's work regarding the Biogen Therapeutic.

***Neurimmune Seeks an Undeserved Windfall by Laying Claim to the***
***Biogen Therapeutic and Biogen's Proprietary Tissue-Enhanced Delivery Platform***

28.    In December 2024, Biogen MA Inc. and Neurimmune SubOne AG entered into a new Confidentiality Agreement governing the exchange of confidential and proprietary information in connection with a potential new transaction.

29.    In December 2024, and pursuant to that Confidentiality Agreement, Biogen disclosed to Neurimmune certain proprietary information about its Tissue-Enhanced Delivery Platform and the Biogen Therapeutic that was the result of Biogen's independent and distinct research and development efforts.

30.    The Confidentiality Agreement was executed prior to any discussions regarding, or disclosure of, the Biogen Therapeutic.  The Confidentiality Agreement was executed specifically for the purpose of evaluating this unrelated opportunity, which was outside the scope of the 2007 Collaboration Agreement.  Neurimmune also expressly acknowledged in the Confidentiality Agreement that each party, including Biogen, had proprietary information.

31.    In its recent communications with Biogen, however, Neurimmune asserted that Biogen's independently invented and developed Biogen Therapeutic is covered by the 2007 Collaboration Agreement, and claimed rights to the Biogen Therapeutic.

32.    Specifically, Neurimmune, through a Boston, Massachusetts-based representative from a third-party investment bank, Chestnut Partners, Inc., contacted

Biogen.  Neurimmune suggested that it had contractual rights to the Biogen Therapeutic and proposed a license from Neurimmune to Biogen.

33.    On April 3, 2025, Biogen informed Neurimmune that it does not agree that a license from Neurimmune is necessary to continue development of its Biogen Therapeutic.  In response, Neurimmune stated that certain IP was returned/transferred to Neurimmune upon Biogen's termination of the 2007 Collaboration Agreement in November 2023.  Neurimmune further stated that if Biogen believed it did not require a license, then Biogen should expect to hear from Neurimmune through a different channel.

34.    Biogen disputes that Neurimmune has any rights to the Biogen Therapeutic or any of the proprietary technology that Biogen presented under the Confidentiality Agreement.

35.    On April 28, 2025, Neurimmune's General Counsel sent a letter to Biogen claiming that Neurimmune has rights under the 2007 Collaboration Agreement to the Biogen Therapeutic and that, to continue with development and commercialization of the Biogen Therapeutic, Biogen would need a license from Neurimmune.  Neurimmune's claims that it has rights to the Biogen Therapeutic, or Biogen's proprietary technology, is both legally and factually incorrect.  In addition, it threatens Biogen's investment in and continued development of its proprietary technology, by itself or in collaboration with third parties, for the benefit of patients suffering from Alzheimer's disease.

36.    Neurimmune's conduct, as described above, creates a threat that Neurimmune will assert a claim to the Biogen Therapeutic, and to Biogen's Tissue-Enhanced Delivery Platform, through litigation.  Neurimmune's unsubstantiated claims threaten Biogen's investment and continued development of its proprietary technology, including with third parties.

### COUNT I:  DECLARATORY JUDGMENT
### THAT NEURIMMUNE HAS NO RIGHTS TO BIOGEN'S TECHNOLOGY

37.    Biogen incorporates by reference each of the preceding paragraphs as if fully set forth herein.

38.    An actual, present, and justiciable controversy exists between the Parties with respect to the scope of rights relating to the Biogen Therapeutic.  Specifically, an actual, present, and justiciable controversy exists in light of Neurimmune's claim that it has rights to Biogen's proprietary technology under the 2007 Collaboration Agreement, whereas Biogen maintains that Neurimmune has no such rights.

39.    The 2007 Collaboration Agreement was related to a defined set of monoclonal antibody products derived from humans for research, development, and commercialization as set forth therein.  The 2007 Collaboration Agreement did not confer any rights to Neurimmune related to the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in whole or in part.

40.    Accordingly, Biogen is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that (i) the 2007 Collaboration Agreement gives no rights to Neurimmune in the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery

Platform, in whole or in part, and (ii) Neurimmune has no ownership, license, or other interest in the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in whole or in part.

## COUNT II:  PERMANENT AND MANDATORY INJUNCTIONS

41.    Biogen incorporates by reference each of the preceding paragraphs as if fully set forth herein.

42.    Biogen has no adequate remedy at law for the irreparable harm it will suffer as a result of Neurimmune's ongoing wrongful conduct.

43.    The balance of hardships weighs in Biogen's favor and supports that a remedy in equity is warranted.  The public would also not be disserved by granting Biogen a permanent injunction.

44.    Biogen is entitled to an order permanently enjoining Neurimmune and any person or entity acting in concert with Neurimmune, at its direction, or under its control, from taking any actions inconsistent in any respect with the foregoing declaratory judgment.

45.    Biogen is further entitled to a permanent injunction requiring Neurimmune to disclose this Court's Order regarding declaratory relief to any person or entity to which Neurimmune has claimed any rights relating to the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in whole or in part.

46.    Biogen is further entitled to a permanent injunction enjoining Neurimmune from disclosing to third parties or seeking to patent the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in whole or in part, in

view of the disclosure that Biogen made to Neurimmune pursuant to the Confidentiality

Agreement, in accordance with the terms of the Confidentiality Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Biogen respectfully requests that this Court enter

judgment in its favor against Defendant Neurimmune and grant the following relief:

A.     A declaratory judgment that (i) the 2007 Collaboration Agreement gives

Neurimmune no rights to the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery

Platform, in whole or in part, and (ii) Neurimmune has no ownership, license, or other

interest in the Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in

whole or in part;

B.     A permanent injunction requiring Neurimmune to provide this Court's

Order to any person or entity to which Neurimmune has claimed any rights relating to the

Biogen Therapeutic or Biogen's Tissue-Enhanced Delivery Platform, in whole or in part;

C.     A permanent injunction enjoining Neurimmune and any person or entity

acting in concert with Neurimmune, at its direction, or under its control, from taking any

actions inconsistent in any respect with the foregoing declaratory judgment;

D.     A permanent injunction enjoining Neurimmune from disclosing to third

parties or seeking to patent the Biogen Therapeutic or Biogen's Tissue-Enhanced

Delivery Platform, in whole or in part, in view of the disclosure that Biogen made to

Neurimmune pursuant to the Confidentiality Agreement, in accordance with the terms of

the Confidentiality Agreement;

- 13 -

E.    Attorneys' fees and costs, and fees and costs of experts and witnesses; and

F.    Such other and further relief as the Court may deem just and proper.

Dated: May 13, 2025                 /s/ Ryan Meuth
                                    _____

                                    Ryan Meuth, BBO#714093
                                    ryanmeuth@paulhastings.com
                                    PAUL HASTINGS LLP
                                    200 Clarendon Street
                                    49th Floor
                                    Boston, MA 02116
                                    (617) 912-1800

                                    Preston K. Ratliff II (*pro hac vice* forthcoming)
                                    Ashley N. Mays-Williams (*pro hac vice* forthcoming)
                                    Dana Weir (*pro hac vice* forthcoming)
                                    Amanda L. Pober (*pro hac vice* forthcoming)
                                    Christopher P. Hill (*pro hac vice* forthcoming)
                                    Lucas L. Kressel (*pro hac vice* forthcoming)
                                    Sarah E. Spencer (*pro hac vice* forthcoming)
                                    PAUL HASTINGS LLP
                                    200 Park Avenue
                                    New York, NY 10166
                                    (212) 318-6000

                                    Igor V. Timofeyev (*pro hac vice* forthcoming)
                                    PAUL HASTINGS LLP
                                    2050 M Street NW
                                    Washington, DC 20036
                                    (202) 551-1700

                                    *Attorneys for Plaintiffs Biogen Inc. and*
                                    *Biogen MA Inc.*